Zaneta M. King,           :

           Petitioner     :

                             :

        v.                  :

                             :

Unemployment Compensation     :

Board of Review,            :    No. 2386 C.D. 2014

           Respondent   :    Submitted: June 19, 2015


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                         FILED: September 25, 2015

       Zaneta M. King (Claimant), pro se, petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) November 21, 2014 order affirming the Referee's decision finding Claimant ineligible for UC benefits under Section 402(e) of the UC Law (Law).[1] Claimant presents two issues for this Court's review: (1) whether the UCBR's finding that Claimant arrived late for work on July 17, 2014 was based on substantial evidence, and (2) whether the UCBR properly concluded that Claimant had engaged in willful misconduct and thus was ineligible for UC benefits under Section 402(e) of the Law. After review, we affirm.

       Claimant was employed as a full-time receptionist by Abington Memorial Hospital (Employer) from February 4, 2013 until July 21, 2014, when her

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (relating to discharge for willful misconduct).

employment was terminated after a final incident of tardiness following several warnings.

Employer had in place "Rules of Personal Conduct," as set forth in its Employee Handbook, which provides for disciplinary action of an employee to be determined based upon factors including "the nature of the infractions, previous disciplinary history, employee status and length of service." Original Record (O.R.) Item No. 2: Employee Handbook at 24. "[L]ateness or absenteeism that is patterned, excessive or repetitive," is included in Employer's list of serious infractions. *Id*. Claimant received the Employee Handbook on February 4, 2013.

Employer's timekeeping policy No. 415 (Policy No. 415) provides in relevant part that employees "must 'punch' in at the beginning and out at the end of their shift within 7 minutes of the start/finish of their shift[,]" and clarifies that "[t]he seven (7) minute period described above **is . . . not a grace period**. [The grace period] does not change the fact that **each employee is expected to be at his or her work assignment at the start and end time of their scheduled shift to be considered** '**on time.**'" O.R., Item No. 2: Policy No. 415(B)(1)(a), (c) (emphasis added). Policy No. 415 defines "on time" as "being in your work area, ready to work at the start and end times of your shift." O.R. Item No. 2: Policy No. 415.

On May 14, 2013, while assigned to Employer's Physician's Network, Claimant received a written warning about her "consistent[] late[ness,]" which described that she was at least five minutes late each day (and more than fifteen minutes late, eight of those days) in a single two-week pay period. O.R. Item No. 9, Ex. E1. According to Claimant, while working for Employer's Physician's Network, Claimant was afforded a seven-minute grace period at the start of her day.

In May 2014, Claimant transferred from Employer's Physician's Network to Employer's Ambulatory Services Unit. On May 11, 2014, Claimant was suspended for violating Employer's "performance standards; lateness[.]" On July 1,

2014, after Claimant again arrived late to work, Employer met with Claimant and notified her, in a written Record of Employee Conference (Notice) that referenced nineteen additional tardiness incidents between May 22, 2014 and July 1, 2014 for which she was suspended for two days, effective July 9, 2014. The Notice advised her that she had violated, *inter alia*, Policy No. 415, and reminded her that she "is expected [to] arrive on time for work as scheduled." O.R. Item No. 2: Notice at 2. The Notice also warned Claimant that "[a]ny further incident of lateness or unscheduled absenteeism will result in termination." *Id.* According to Claimant, the July 1, 2014 meeting was when she learned that a seven-minute grace period was not permitted in the Ambulatory Services Unit.

On July 7, 2014, Claimant's supervisor Danielle McKenna (McKenna) emailed Claimant and several other employees, directing them to review Policy No. 415, and clarified that "there is no 'seven[-]minute grace period' – 'on time' means you are in your assigned work area and ready to begin[] work[.] [] In your assigned work area means at your assignment (not in cafeteria, gift shop or parking your car)." O.R. Item No. 2, July 7, 2014 email (McKenna email).

On July 17, 2014, Claimant arrived at work. However, fearful that she would be late if she parked in Employer's parking lot, she double-parked in Employer's valet area, entered the building and clocked in at 8:00 a.m. After clocking in, Claimant left the work area to move her car to the parking lot. She did not return until 8:06 a.m. On July 21, 2014, Employer terminated Claimant's employment for violating Employer's work rules.

Claimant applied for UC benefits. On August 8, 2014, the Altoona UC Service Center determined that Claimant was ineligible for UC benefits under Section 402(e) of the Law. Claimant appealed and a Referee hearing was held on September 9, 2014. On September 11, 2014, the Referee affirmed the UC Service Center's determination. Employer appealed to the UCBR which adopted and incorporated the

3

Referee's factual findings and legal conclusions, and affirmed the Referee's decision. Claimant appealed to this Court.[2] Employer intervened.[3]

Claimant first argues that substantial evidence does not support the UCBR's finding that she violated Employer's tardiness policies on July 17, 2014. We disagree. Our Court has explained:

> 'Willful misconduct' is defined as: (1) a wanton and willful disregard of the employer's interests; (2) a deliberate violation of the employer's rules; (3) a disregard of the standards of behavior that an employer rightfully can expect from its employees; or (4) negligence that manifests culpability, wrongful intent, or evil design, or an intentional and substantial disregard of the employer's interests or the employee's duties and obligations. **When an employee is discharged for violating a work rule, the employer must prove the existence of the rule and the fact of its violation. The burden then shifts to the employee to prove that he or she had good cause for violating the rule.**

*Lewis v. Unemployment Comp. Bd. of Review*, 42 A.3d 375, 377 (Pa. Cmwlth. 2012) (citations omitted; emphasis added).

The record evidence is clear that Employer's rules required that employees arrive at their work areas on time, "ready to work at the start . . . of [their] shift[s]." O.R., Item No. 2: Policy No. 415. Claimant admits receiving Employer's Employee Handbook, and did not dispute the existence of McKenna's email. Accordingly, Employer met its burden of proving the existence of its work rule. Thus, the pertinent question becomes whether the UCBR properly found that Employer established Claimant's violation of its work rule.

---

[2] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

[3] The UCBR did not file a brief.

Claimant contends that on July 17, 2014, she arrived and clocked in on time at 8:00 a.m. Claimant then checked in with her department and, after determining that no patients needed her assistance, left to move her car. Further, Claimant contends that she believed she had a seven-minute grace period and, accordingly, was not late. Claimant testified:

> I ran in to punch in because I couldn't be late again as of my meeting with Ms. Harris, Ms. Hartman and [] McKenna. . . . [A]t that time on July 17th I did come in, punched [in]. I ran into [] McKenna coming out of another department where the [time clock] is. I went into our department, I went to a co-worker that was at the greeter's desk and I whispered in her ear are you okay. Is any patients [sic] that needs to be registered, checked in or anything like that. She said no. I told her I'll be right back. That's when I proceeded to go out to move my car.

O.R. Item No. 9, Notes of Testimony (N.T.) at 13. Claimant's testimony does not demonstrate that she was at her "work area, ready to work at the start . . . of [her] shift[.]" O.R., Item No. 2: Policy No. 415. Rather, Claimant's testimony that she checked in with her co-worker before moving her vehicle establishes that she was **not** "ready to work," while her car sat double-parked in Employer's valet area. *Id.* Thus, we hold that substantial evidence supports the UCBR's finding that Claimant violated Employer's work rule.

Having determined that Claimant violated Employer's work rule, we consider whether Claimant had good cause for the violation. *Lewis.* Specifically, Claimant "must prove that . . . her actions were justifiable or reasonable. To determine whether the claimant has satisfied this burden of proof, this Court must examine the reasons for the claimant's non-compliance and determine whether he or she acted reasonably under the circumstances." *Arbster v. Unemployment Comp. Bd. of Review*, 690 A.2d 805, 809 (Pa. Cmwlth. 1997) (citation omitted). Claimant argues that she had good cause to leave the workplace on July 17, 2014 to move her

5

car after "punching in," because she was concerned that her car would be ticketed and towed. After receiving repeated warnings about her tardiness, Claimant failed to allow sufficient time to arrive at work, legally park and be at her area ready to work by 8:00 a.m. Therefore, Claimant's behavior created the dilemma in which she found herself. While it is reasonable that Claimant did not want her car ticketed or towed, Claimant's actions in creating the circumstances were unreasonable and, thus, do not support a finding of good cause for disregarding Employer's rules.

Claimant also argues, for the first time in her brief, that McKenna approved Claimant's actions in leaving to move her vehicle. "Our case law is unwavering that when a party fails to raise an issue, . . . the issue is waived and cannot be considered for the first time in a judicial appeal." *K.J. v. Pennsylvania Dep't of Pub. Welfare*, 767 A.2d 609, 612 (Pa. Cmwlth. 2001). Because claimant failed to raise this issue below, it is waived. Notwithstanding, Claimant's assertion is directly contradicted by the record evidence. When Claimant was asked, "why didn't you ask [] McKenna if it was okay for you to go outside and park your car and come back late to your workstation," Claimant responded, "I don't – I asked the other, my co-worker." N.T. at 15. When asked whether the co-worker was Claimant's supervisor, Claimant responded: "No, she's not. No, of course she's not." *Id*. Finally, when asked, "[a]nd if your supervisor is sitting right there why didn't you ask her," Claimant responded, "[p]robably because she wasn't who I was actually working with up front." *Id*. Accordingly, Claimant's argument contradicts her testimony. Because Claimant failed to meet her burden of proving good cause for violating Employer's work rule, we hold that the UCBR properly determined that Claimant engaged in willful misconduct and was ineligible for UC benefits under Section 402(e) of the Law.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Zaneta M. King, :
                 Petitioner :
                 :
            v. :
                 :
Unemployment Compensation :
Board of Review, : No. 2386 C.D. 2014
            Respondent :

**O R D E R**

AND NOW, this 25th day of September, 2015, the Unemployment Compensation Board of Review's November 21, 2014 order is affirmed.

_____
ANNE E. COVEY, Judge